Council, before you begin, who's going to argue for the appellate? You're the only one that's going to argue? Okay, that's fine. Go ahead, Councilman. May it please the Court, Tim McPike, Assistant Attorney General, representing the Department of Revenue. Your Honors, we ask that the appellate court reverse the circuit court's summary judgment, grant a summary judgment to the appellees, because the Cains failed to prove two of the four elements to show a change of domicile, which is the equivalent of residence under the Illinois Income Tax Act. Those four requirements are that you show an actual and physical abandonment of the old domicile, you show an intent not to return to the old domicile except temporarily, you move to a new state, and you demonstrate the intent to make the new state your permanent domicile. Now, the facts, those are all fact showing. The Cains here failed to prove the first two. They failed to prove physical abandonment of their old domicile. In fact, they spent half their time there over this eight year period, nine year period, and in several years, four of those years, they spent more time in their old domicile. And they also failed to show an intent not to return except temporarily. The Cains had the burden of proof of all those elements, and we submit that the standard of proof should be clear and convincing on those elements. Now, the type of facts that both the Department's regulations and the case law says, the type of facts that you look to, to determine whether there's been a physical abandonment and facts showing an intent not to return, there's essentially three or four types of facts. First of all, you compare the time spent in each jurisdiction. And if you look at the regulations, that's 100.320C, examples 1, 2, and 3. All three of those regulations and the examples they give compare the time spent in each jurisdiction. But even where, under the case law, where you spend more time in the new jurisdiction, that alone is not enough to abandon your domicile. And specifically, if you look at the Kemp case out of California, which we cite, and the Schultz case in Illinois, an older case in Illinois, where Mr. Schultz had no more permanent residence in Illinois, and he was wandering off in California where he died looking for a new domicile, but he left his violin, his personal papers back in Illinois, they still held that he had not abandoned his domicile. So time spent should be compared, but when you... Isn't abandonment of domicile really a question of intent? No, it's a question of, there's two elements to it, Your Honor. There's not only intent, not to return except temporarily, but there's also actual physical... How about an intent to adopt a different domicile? Well, you can have an intent to adopt a different domicile without showing that you have yet demonstrated your intent to abandon the old one. You can't have two domiciles. You have two residents, but not two domiciles. Yes, but the second domicile isn't established until you've established all four elements. Well, it says here that there's no dispute that in 1995, these plaintiffs physically left their home in Illinois, renounced their Illinois residency, physically moved to Florida, and openly declared Florida to be their domicile. They voted from Florida, they had Florida driver's licenses, and they spent about the same amount of time in Florida as they spent in Illinois. That's correct, Your Honor. So what does that mean? So that means that they have moved to a new state, but they haven't. This is what makes these types of cases under this Department of Revenue's program difficult and requires some rethinking of these elements, is the typical old case that you left one place and moved to another place. Well, now we're dealing with parties here who have enough wealth that they actually have a full home in Illinois and a full home in Florida. They have social contacts in Illinois, and they have business contacts in Illinois. They don't have any business contacts in Florida because they're retired. They have social contacts in Florida. So you have to look at the four elements. Have they physically abandoned Illinois? Clearly not. They're still spending half their time here in the house that has been their house and their family home for 40 years. Have they demonstrated an intent not to return except temporarily? A separate element from those elements Your Honor mentions, voting, getting a driver's license, those are all showing an intent to make a new domicile, but it can't be established until you leave the old one, until you just show that you're not going to go back to the old one except temporarily. Well, there's facts here. Well, then I suppose a person who owns a home in Illinois and then acquires a home in another state can never establish a domicile in the other state until they sell the house in Illinois. No. Why not? Because you can compare the time to see, but you also have to look at the other... It's 50-50 here. Beg your pardon? It's 50-50 here. Yes, it is. And you also have to show the intent not to return except temporarily. It says here in your regulation, if, however, he leaves Illinois for other than temporary or transitory purposes, he thereupon ceases to be a resident. If an individual is domiciled in Illinois, he remains a resident until he is outside of Illinois for other than temporary or transitory purposes. Now, I realize your regulation really doesn't make sense if you read it from start to finish. Either it's to be judged by temporary residence in Illinois or it's to be judged by temporary residence in Florida. If you read this thing, at the beginning of your definition of a resident, it's judged by whether the residence in Florida is temporary, where at the end, the question is whether the residence in Illinois is temporary. Yes. And it can't be both. That's correct. That's why we have to go back and look at it. Better send this one back to JCAR and tell them to get somebody that, you know, doesn't make a hobson's choice out of a single regulation. That's why, Your Honor, we have to look at the case law, and we have to look at the clear holdings of cases such as the state of Ellison, Viking Dodge. It says you have to show all four elements. And that's why here the burden of proof is so important, and here the fact that the Keynes not only maintained approximately equal residence in both places, but also where were their business and social contacts? And where were their personal interests and most intimate possessions? That's a clear holding under the Schultz case, where the guy completely left, except he kept his most intimate and personal possessions in Illinois. And in the Kemp case out of Florida, where they talk about they were in California, it's a California case, you know, 85% of their time, and they didn't even have a permanent residence in Illinois, and under a statute very similar, if not identical, to the Illinois statute, the California court said they're not California residents. They keep their business going in Illinois. Their personal contacts are back in Illinois. Here we have the only thing in the record we don't know were the Keynes, you know, if they moved all their family memorabilia from 40 years of raising their children. If they moved those to Florida, the record doesn't show. The record shows they kept their most valuable artwork. Painting. Painting. But it's not where your wallet is, it's where your heart is. So the question is, what are the facts in the record that show their business and social relationships and their personal interests and their personal belongings? Well, their personal interest, the record shows, was Mr. Keynes continued to trade, to do commodities trading, stock trading, and Mrs. Keynes had her personal avocation. We're not claiming it was a business. Her personal avocation of continuing her interior design work. In both of those situations, they could have moved the locus of those things to Florida. The Illinois statute on interior design doesn't require you to be a resident, and, in fact, the record shows that she filled out the form and maintained her Illinois residence. She didn't change residence. It doesn't seem to be that significant of a fact. Well, this is a close case. And, remember, they can't win just by showing they moved to Florida and intended to make it their personal, their new domicile. They can't win on that. They have to show all four. And they have the burden of proof in showing it, and they have to show it clearly. Did they even buy funeral plots in Florida? Where you died doesn't count either. Well, you understand where you died, but generally don't you like to be buried where you're domiciled? I don't know. Well, Your Honor, as I think it was in ancient history, Herodotus, the guy said you can't decide if somebody had a happy life until they're dead. If, in fact, they do end up being buried in Florida, then they have a good case, but those things can be changed at any time. Registering to vote, the case is Jackson's estate, is only evidence of the fourth element, intent to establish a new domicile. Something has to change in Illinois to show that their heart isn't here anymore, that their personal possessions, that their interests aren't centered here. They kept all of his trading companies. He even started a new business. And where did he register? At his Illinois address. They spent half their time there. Their family, after the- Can I ask you, if you could work with me a little bit on the statute. There's the use of the word resident and there's the use of the word domicile. And I think even in the regulation that Justice Hoffman just talked about, there was an interchange of domicile and residency. You say that the state is, in the briefs, is using the domicile element of taxation. But it also says that you can be taxed, using the word resident, if you're in Illinois for other than a temporary or transitory purpose during the taxable year. And then there's an or, who is domiciled in Illinois. How do you distinguish- 35 ILCS 5501-A-17. 17? No, A-17 is- If individuals leave the state for other than temporary or transitory purposes or establish a domicile elsewhere, they cease to be Illinois residents. Yes. Did they establish a domicile? So what A-17 does, part-time resident, the second part of that, what that boils down to is equating residence and domicile. When you establish domicile in another place, you cease to be an Illinois resident. You can't establish domicile in another place until you abandon your Illinois domicile. That's what the case law says. So how A-17 works out is it makes domicile the equivalence of residence. You don't stop being a resident until you've established a domicile in another place. What the statute doesn't contain is the case law that says, and you can't establish a domicile in another place until you abandon your Illinois domicile and intend not to return. Okay. So it says an individual who is in Illinois for other than a temporary or transitory purpose during the taxable year. I'm sorry. You're reading from which? Or. 28. Or. There's an or there. Or who is domiciled in this state but is absent from the state for temporary or transitory purposes during the taxable year. They're considered residents. Yes. Then you have to look at A-17 right up above it. If you're looking at page 4 of my appellate's brief, it's right there. I have to look at. I'm sorry. What council? I'm sorry. If you look at our appellate's brief, the white brief. I'm on page 4. Page 4, Statutes and Regulations. If you look at A-17, 1501 A-17, the last sentence. Under 1508 A-20 A-2, that's after the or on A-20 A, residents commences with the establishment of domicile in this state and ceases with the establishment of domicile in other states. So when you're reading A-20 A-2, small Roman II, you have to read A-17 with that. So what does it take to establish a domicile in the state of Florida? For purposes of Illinois law, you have to do the four elements I mentioned. You have to physically abandon Illinois, which they can't prove. You have to establish a residence in the state of Florida, and you have to have an intention that Florida become your domicile and that Illinois cease to be your domicile, or you have to prove it. You have to prove four things. Physical abandonment of Illinois. But if your theory were correct to sell the Illinois house, how do you do that? No, they just have to show you have to balance all these three types of things. Okay, they spend more money on their social clubs in Florida than they do on their social clubs in Illinois. Money is not the issue. The issue is, here are the three categories of facts that you look at to establish the first two things, physical abandonment and intent not to return to Illinois. You look at the category of time spent. You balance time spent. You look at the category of their business and social connections, and you do a balance of those. You look at the category of where their most intimate and personal possessions are and where is the locus of their personal interests. That's the Schultz case. And the balancing of the business and social connections, that's Kemp case, the Holt case, and the reg at 320C, examples two and three. And the first one, the time spent balancing those is the reg, all three examples under the reg, 320C, one, two, and three, and the Holt case. But as the case law shows, in looking at the first two elements, physical abandonment, intent not to return. When you talk about physical abandonment, what do you mean by abandonment? Well, what physical abandonment means in the context of somebody who has a full residence, full home, physical house with physical possessions in both places, this comes under the balancing, the looking at the time spent, the categories of facts, time spent, business and social connections. So you will concede that a person can have two residences? Yes. One in Illinois and one in Florida? Yes, the regs. And just because the Illinois residents came first doesn't mean they cannot establish a Florida domicile? That's correct. Okay. So now we've got two houses, and one's in Illinois, now they've got the one in Florida, they renounce, they say they renounce. No, they don't. Well, yes. Yes, they certainly did. They signed the documents indicating that they renounced their domicile in Illinois and adopted a Florida domicile. That's right. They signed the document. You're correct. They spend more of their social money in Florida than they do in Illinois. But money is not the criteria. The criteria is what is their activities in Illinois and Florida. Yes. And the activities in Illinois is they continue not only their clubs, but they continue to serve as members of the board of those clubs. So that is a – Consumers serve as members of the board of what? That would be on – that would be in a brief – Are they on corporations? No. For instance, Mr. Cain continued to serve as a member of the board of the Shore Acres Club in Lake Bluff, Illinois, from 2000 to 2005. So the tax years were – Do they have to be Illinois domiciliaries to serve on the board of those clubs? No, you're getting – Your Honor, that's putting the cart before the horse. The issue is – let me – I can't figure out from your argument where the cart and the horse are. Okay. There's two elements that we say they haven't proved. And there's three categories of facts that you look at to see whether they've proved those elements. Okay. The two elements are physical abandonment, actual – But what do you mean by abandonment? Well, I'll explain when I explain the three categories. No, let's try right now. Tell me what you mean by abandonment. Okay. By whether they physically abandoned the property. You look at whether – and let me say physically abandoned with intent not to return. You look at three categories. Time spent. You balance the time spent in both locations where they have two houses. You look at – balance their business and social connections in both locations. And you look at where they – where is the locus of their personal interests and their most intimate possessions, not where their most expensive possessions are. And as far as their social interests, not how much money they spend, but what activities. Money has nothing to do with this. This is about what your intention – Well, money has something to do with it, but – Only as far as the tax – Well, it's hard to compare when you just have dollars. I agree. Yes. You have to actually look at what they're doing. Okay. Here, what they're doing. Have they physically abandoned? Have they intended not to return? Time spent. Spent equal time in both places. Business and social connections. They're only, quote, business, which is really not business anymore. They have accountants and lawyers here. They have accountants and lawyers in Florida. Social connections. They have clubs that they spend time at there, some of which they're serving on the boards of. They have clubs in Illinois that they're spending time at, some of which they continue to serve on the boards of. Intimate and personal possessions. We don't know. We don't know where their family photos are. We don't know if they moved all the memorabilia of raising their kids to Florida when they built their new house or they left it in situ in Illinois. We don't know that. The record does show that their personal interests were continuing to trade stocks, commodities, and interior decorating. That's in Illinois. It continues to be in Illinois. They have the burden of proof on these issues. The fact that they register, vote, did all those things, that does show intention to establish a new domicile, but that isn't enough. That's only one element. What do your regulations indicate is the type of evidence that's used to determine whether a person is or is not a resident of a given state? It does indicate, as I'm sure what your honors anticipated. Voter's registration. Automobile or driver's license registration. Yes. Filing of income tax returns or registered of another state. Yes. Home ownership or rental agreements. Club and or organizational memberships and participation. Telephone and other utility usage over a duration of time. Yes. And they had, except for the registering to vote and things like that, those were equal in both places. Well, certainly they didn't have driver's license in Illinois. No. Again, that's the wrong element because that all goes to show their intent to make it their new domicile. Remember, you have to prove four elements. Moving to a new state and demonstrating your intent to make it a new domicile is not enough. You have to actually prove the other two, physical abandonment, intent not to return. But, you know, physical abandonment, to me, you're not satisfying unless they sell the house. No. We don't require that. You have to show the first two elements, physical abandonment, intent not to return. The court has to balance these three types of facts that we talk about, time spent in both locations, business and social connections, personal interests. Those three types of facts. The facts are pretty equal on all of those except for, you know, time spent in some, I mean, it's really kind of 4.04% over nine years in one place or the other is not going to be the determinative factor. You have to look at what have they abandoned in Illinois. They kept all their social connections up. They kept their memberships up. They kept their memberships as members of the boards up. They kept their business licenses here. They kept their stock trading companies here. They even established a new stock trading company, and it was here. They have the burden of proof. They failed to show it. What is intent not to return? Except temporarily. Except temporarily. Temporarily. Now, a perfect example of that. So intent not to return and make it a domicile again? No, because you have an intent not to physically return to Illinois except temporarily. In other words. Isn't that what's going on here? It could have been if they could have shown that they were, you know, again, those first two things, you look at all these three categories of facts I talk about and you have to balance them, and then they have the burden of proof. They have to show clearly and conclusively. When they're spending half their time here and more than half their time here in some states, when they're continuing their personal interests and business licenses here and making them the locus, they could have filed those changes there. When you say they. Mrs. K. Mrs. K. never used that license in either state. Although she had. No, she had a license for interior decorating, and it's clear that she was using it just for her personal interests. And again, personal interests is one of the things that you look at. She could have changed it to Florida because you don't have to have an Illinois address to have that. But she did. She kept it here. They kept everything here except the things they needed to do to show intent to move to a new domicile, but they didn't show intent to do anything less in Illinois. I guess we're going to boil it down to that. They have to show something is less in Illinois other than registering to vote in cars and kept their business and social connections up here. Personal interests, as far as we know, the only things are here, and the time spent here. Again, it's hard to say you've abandoned the place when you're spending more time here. Okay. Let's hear from your opponents. We'll give you a little bit of rebuttal. Thank you, Your Honor. Thank you, Your Honor. Michael Winn on behalf of Tyler and Talbot Cain. Your Honor, there's two things that the department has to do in order to win this appeal. The first is, contrary to the Income Tax Act, contrary to 150 years of case law in this state, and contrary to their own regulation, they have to show that somehow establishing a domicile in another state is not sufficient proof that you've abandoned Illinois. And secondly, let's assume for the purposes of argument that they proved that. They would have to prove that the Cains, every year that they came to Illinois, came here for some purpose that was other than temporary or transitory. And the evidence is that they never came to Illinois for any purpose other than to leave at a certain point to go back to Florida. So the department is unable to prove the two things they need to establish. You can't prove that you came to Illinois with the intention of staying indefinitely, which is what their regulation requires when you say you travel somewhere, you stay indefinitely. You can't show that if in the other state you've got your driver's license, your voter's registration, your bank accounts, and so forth. Proof of that would be, let me, two examples of the proof of that. Let's assume, as Justice Hoffman suggested, that they had to sell the house. Well, let's not stop there. Let's say they sell everything. Let's say in 1990 they retired and sold every single thing they had, transferred all their money outside of Illinois, told their children in Illinois they would not be coming back, and then move to Florida. They pull a Howard Hughes and stay in a hotel. They take cabs everywhere. Twenty years later the department will be here telling you they have not abandoned Illinois. And I would agree with them. Why? Because they have not shown in the other state any act that shows that they acquired a new domicile. I have difficulty with the definition of temporary and transitory. Is there anything other than indefinite? Or is that indefinite? I don't know what this means. In the regulation, and as you pointed out, you could use some clarity. In the regulation, in the definition of domicile, which is at subparagraph B, the next to last sentence says, it's making a comparison, it says, on the other hand, an individual domiciled in Florida comes to Illinois with the intention of remaining indefinitely and with no fixed intention of returning to California, loses his California domicile. What I'm suggesting to you, this indefinite business, if a person owns a home in Illinois and owns another home in Florida, do they really intend to stay indefinitely in either place if they spend half the year in each? Yes, Your Honor. I think we can show it by what happens if they happen to stay indefinitely. Let's say the Canes came to Illinois and one year decide, for whatever reason, they overstay in the department's view. So what starts to happen? After a certain time, they're unable to drive because they have to take an affirmative act of getting an Illinois driver's license. After a certain point in time, they're unable to vote because they have to take an affirmative act of registering to vote. After a certain time, there's summonses for jury duty arriving in Florida that they're not showing up for, and there's a summons for their arrest in Florida. I mean, there's things they have to do in Illinois to show that they're staying here indefinitely. And so at no time in the depositions of Mr. Cain or in any of the stipulated facts was there evidence that the Canes ever left Florida with the intention of staying in Illinois for any period other than just the summer months. Now, they cite the Klimt case in California. Well, let me deal with the Illinois case first because I think they're much more relevant. If you go to the time spent issue, if you look at the Schultz case, Mr. Schultz left Illinois. He left his prize violin, left all his effects here. He took a brown suit with him and went to California and was gone for years. And he would write letters occasionally saying, I'm staying through the winter. They're treating me nicely in the hotel here. And the court found that he had not abandoned his Illinois domicile. Why? Not because he left his stuff here, but because he didn't take any actions in California to really set down roots and say, I'm deciding to stay here indefinitely. Now, contrast to the Elson case, which they also brought up, which is a young woman who leaves Illinois. And before she leaves Illinois, she leaves Illinois to go to Pennsylvania because she has dreams of being in the equestrian team for the Olympics. Before she leaves Illinois, she gets a real estate license in Illinois because she tells her father she's going to come back rich and famous and buy a farm. And she leaves her stuff in storage, takes her horse, which is a more valuable possession for her as part of her trade and business, and she moves to Pennsylvania. She's there for only six days. And they find a letter she never mailed which says, I moved to Pennsylvania exclamation mark. And the court found that she had demonstrated her intent to be a Pennsylvania resident, to abandon Illinois. What had she done in those six days? In those six days, she had closed her Illinois bank accounts. She had opened bank accounts in Pennsylvania. She had found a place to live. And she had written the letter, I moved to Pennsylvania. It's not the question of a matter of time. It's what you do with that time. Now, in none of the time they've been in Illinois since 1995 can the department show anything, anything that shows that they intended to stay here indefinitely. In fact, it's the entire opposite. They declared their domicile in Florida. They registered their cars in Florida. They have nothing registered in Illinois. They actually served. They were summoned for jury, and they showed up. And in one case, both of them were dismissed. But they showed up. They voted in person in absentee in Florida. So they've done everything that the regulation says you have to show to acquire a new domicile. And so we come again to the question, which we've asked the department repeatedly, what one fact in Florida do we not have that we should have? Well, I'll tell you what he's going to say. He's going to come back and stand up and say, because you didn't abandon Illinois without any intention of ever returning. And that's in the code. There's no question about that. And I keep asking the same question, what does that mean? Well, they have the temporary transitory test before people who are domiciled elsewhere and come to Illinois for other than temporary transitory purposes. What does that mean? It means you, according to the language in their domicile, it means you come here for an indefinite stay. And you look at residency in each year. So in each year, did they make any indication that they were leaving Florida to not return to Florida? They have different examples here. On page 17 of your brief, it says if an individual is simply passing through Illinois on his way to another state or is here for a brief rest or vacation or to come to complete a particular transaction, those are the types of things that are temporary or transitory. It's a little different than what the Keynes are doing. They're returning to their longtime Illinois home with longtime contacts and family for six months of the year. Well, but they always leave, Your Honor. They always come with the intention of leaving. And as far as their contacts, yes, they have children here. They have a child who is married. They have another child in Ohio. Nothing in no case requires you to abandon your family or to take a spinoff of allegiance to Illinois that you will love entirely. Well, I'm not asking. None of that fits within what's fit. No, but what does fit is if you look at the examples that they have on the individuals who do retire. They have three examples in the regulation about it. A couple, for example, in Minnesota who has a business, and the gentleman retires from Minnesota and he has a house.  First he rents in Illinois, then he buys a house in Illinois. And they find that it's where your connections are. And what do they point out in the regulation? They point out that they haven't established new connections in Illinois. They only kept their connections in Minnesota. Well, that's not the case here. They established new connections in Florida. In fact, they exceed their connections in Illinois. They serve on various boards in Florida. They serve on a number of organizations in Florida. Now, that doesn't mean they have to require to resign from every Illinois participation, but they have shown that they set down roots in Florida, which is what the regulation requires. Doesn't that go to the intent not to return? It goes to the intent not to return and stay indefinitely. I mean, the physical abandonment that keeps being mentioned is not a test. The abandonment that is required in the regulation is the abandonment of the intention. And you show that by your acts. In every single case, they looked at the acts in the other state to show your intention not to return to Illinois. Exactly, but your client intended to return to Illinois. Excuse me? Your client intended to return to Illinois. They had a house here. Well, you look at it both ways. Does he intend to return to Illinois and stay indefinitely? In no year can they show that they intended to stay indefinitely. But their regulation says you're domiciled in Illinois, and you lose the domicile in Illinois by locating elsewhere with an intention of establishing a new location as his domicile, which clearly you could do that, and it's in the conjunctive, by abandoning any intention of returning to Illinois. And so I get back to my question I asked your opponent. What does it mean to abandon? Well, you would have to, because I think they acknowledge we established domicile in Florida, but for their test of abandonment, you would have to have evidence that you are making new routes in Illinois to abandon Florida. I mean, as you pointed out, you can only have one domicile at a time. When we've proved we acquired a Florida domicile, and then when we come to Illinois, the question is, what have you done in Illinois to prove you abandoned Florida? Did you start your driver's license in Illinois? Did you start your voting in Illinois? Did you do anything that affixed you to Illinois in a way that indicated this is where you wanted to live? I'm glad he said this is where your heart is. The very first paragraph in our complaint was that they honeymooned in Jupiter Island, Florida, and then came to Illinois and spent years working here. I'm glad you went in. There is definitely stipulated facts, and there is a very, very strong paper trail. And I know that InTech turns on a lot of these things, but there is nothing of how they deal with their homes or why they made their decisions. You do include things in your briefs that they spent five years establishing Florida as their home, or after they truly realized they were residents of Florida, they took their affirmative steps. But I don't have anything in the record that tells me that. Or even you call it their dream home in Florida. Well, yes, the record is that Mrs. Talbot came to design the home in Atkin, and that's what they took to the architect. But the other thing that's in the record is the stipulation. They purchased a townhome in Florida so their children could come and visit them. They want their children to come to Florida to be with them. So they've taken affirmative steps in Florida. Now, not everybody can afford to do it, but they can, and it's an indication of their intent. Their artwork in Florida is worth more, as Justice Huffman pointed out. Well, it's certainly worth more. Whether they like it or not is another question. Their house in Florida is worth more. As Justice Huffman pointed out, when they go to Florida, they have joined all the organizations. They have indicated their intent to acquire Florida's down sale. They don't have to sell everything in Illinois. Can I ask a question? Certainly. How much is Florida's state income tax? Florida does not have an income tax. Isn't that a good indication of where one chooses to have their domicile when the Illinois income tax is over $1 million a year? Well, it wasn't $1 million. It was $1.8 million for the years, but no. So my question is, on the question of whether they intended to establish a domicile in Florida as opposed to whether they intended to maintain their domicile in Illinois, isn't it relevant that one state has no state income tax and the other state does? It is a fact of it. I'll tell you what is relevant. When they moved to Florida and declared it their domicile, they started paying Florida intangibles tax, which is only paid by Florida residents. So they switched from one tax to another. So if this was a tax dodge, they walked into another tax. There's evidence in the record that they filed returns for 96, 97, and 98. What if Florida waited to get you when you died? Well, thankfully that hasn't happened yet. That will be the proof. But, you know, this was tax planning. They paid taxes in Florida, and that tax is like $1 to $1.54 of value. It doesn't matter whether you're making income or not. It's based on value. So it was not a tax dodge. Not only that, there are trusts. There's nothing wrong with a tax dodge. What's wrong with a tax dodge? What's wrong with it? Well, you're allowed to plan your life. I mean, there's nothing wrong with it. You are allowed to plan. I will point out when they were in Illinois, they paid. They said that. I didn't. That's all right. They have continued to pay property taxes in Illinois on their properties, on both properties, the longtime house that they had in Illinois as well as the vacant lot, which they had at one time purchased to attempt to downsize. So they paid property taxes on that.  And they've paid taxes for five years. Just for a second. Best guess, how much would that tax have been over the period of six years? Would it have been $1 million? Which tax? The tax you're talking about, the tax that they have to pay as residents of the state of Florida. It would have been $1 to $1.50 per thousand. It goes in caps under the foreign tangibles tax. I don't know the cane's net worth, but it is considerable. I think since it's per thousand and we're talking about them paying millions, it would not be an inconsiderable amount. So they did not walk into just a pay $500 tax and be done with it type situation. And I would point out one other thing. It's in the record. They have $2.5 million that they had in charitable donations over that period of time. That's more than what Illinois assessed them for all that period of time. And they gave it to Children's Memorial, to Lake Forest Hospital, to Lake Forest College, and to some charitable organizations in Florida. So this was not a question of avoiding a burden in Illinois. The last point in regard to that, Mr. McPike talked about the burden of proof. There's nothing to indicate that the burden here is clear and convincing. That citation that he has is brief to exemption and deduction cases, and this is not an exemption and deduction case. This was not that kind of case. And secondly, about wealth, yeah, there are probably going to be hundreds of people who are unable to litigate the fact that the department tells them they didn't abandon Illinois because they found something in Illinois. So, yes, the Keynes had the wealth to actually litigate the case and show that you don't require a full abandonment. You require under the statute, under the resident statute, under the part year resident statute in 15A17, it requires that you prove your abandonment how? By establishing a domicile in another state. That is the ultimate proof of abandonment of Illinois domicile. Now, you've got a contingent cross-appeal here. Correct, Your Honor. That cross-appeal is moot in two instances. It is moot if you affirm the decision below. It is moot if you completely reverse and find, not only reverse, but find that they were residents of Illinois. It is, however, right, it becomes right if you decide that, let's say, Mr. McPike raised the question of credibility, even though there's a stipulated case in the depose of Keynes and so forth, but he raised the issue. If you were to decide that credibility is an issue and they should go back for trial. Credibility can't be an issue. You get cross-motions for some reason. Well, I agree with you, Your Honor, but he raised the issue. It's a question of law now. I agree with you, Your Honor. If it were to be remanded, then our appeal becomes right because in the prior decision of Judge Delamere that the department's illegal action, which they admitted, of not using Illinois subpoenas under the Income Tax Act and of violating the Fair Credit Reporting Act by getting statements, proves without a doubt that there was irregular administrative action. Which bursts the presumption of administrative irregularity, deprives the notice of the prima facie status it has under the statute of having a prima facie case. And so if this were to be remanded, we should be entitled to have the department introduce a piece of paper and put on more evidence. They can't just put the piece of paper down and sit down and say we have a prima facie case. That would be the prejudice to us if that is not reversed, and that's why it's a contingent cross-appeal. There's federal courts that have approved it. I understand the Illinois Supreme Court has not directly addressed that issue. Their case, the material services case, only deals with when you're trying to attack the final judgment for reasons other than what the judge stated, and that's not what we're doing here. We're attacking a prior order. Thank you. Thank you very much. Counsel Rebuttal. Let me correct two or three misstatements by opposing counsel. First of all, we didn't raise credibility, and if there's anything in our brief that suggests that I disavow, credibility is not an issue here. Second of all, the argument that you abandon your Illinois domicile by establishing court of domicile is circular and wrong. We've set it out, and I understand the courts struggle with these things. Let me just suggest one last time the decisional framework for this. You have four separate elements to show a change of domicile, physical abandonment, intent not to return except temporarily, moving to a new state, an intent to make it your permanent domicile. Those are four separate elements to show physical abandonment, intent not to return. The categories of facts you look at, and you balance them. It's a weighing and balancing, and you weigh them not only each one weigh it, but you weigh the three categories against each other. Time spent in each location, business and social contacts, and personal interests and most intimate personal possessions. Those three categories you weigh time spent, you weigh business and social contacts, you weigh personal and intimate possessions, and you weigh the three categories against one another. And I think if you look at the Kemp case, you look at the Schultz case, you look at the three regulations, the three illustrations of those regulations, that is what you weigh to determine whether they've proven the first two elements. They can't win just by proving moving to Florida and demonstrating intent to make Florida their permanent domicile. That does not do it. They have to prove all four. They do have the burden of proof. The case law that we cite in our brief, Elliston and some of the other cases, many of them deceitful states cases or other cases dealing with domicile. The person asserting a change of domicile has the burden of proof. In tax cases, although I do agree that this is not an exemption or a deduction case, but it's analogous. In tax cases it has to be clear and convincing proof, and I suggest that's the type of proof we need here. Regarding the violation of the Fair Credit Reporting Act, his argument is just, first of all, regarding whether we have a cross-appeal here. The Illinois law is pretty clear. He can raise it in his Appalese brief in the main thing as an alternate reason to support the main judgment. The judge will affirm he can't raise a cross-appeal if he's won everything he seeks. Yes, and the federal cases are the federal cases. They don't apply here. But as to the violation of the Fair Credit Reporting Act itself, which this court can consider in the case in chief, his argument is circular. Yes, the department did violate the Act technically. The information they actually wanted, the record shows, was only the addresses which they could have gotten without violating the Act. But they did violate the Act. But there's no prejudice. Their argument about prejudice is, well, we had to defend the notice of deficiency, and the notice of deficiency, that was prejudicial because it was void because there was prejudice. So it's a circular argument, and it doesn't get them anywhere. It doesn't prove anything. No further questions? Nothing. Thank you. Counsel, thank you. The matter will be taken under advisement.